IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. No. CR-24-62-D |
| ) | |
| CARL WAYNE MCCOY and ) | |
| GERMAINE LEVEHT PARKER, ) | |
| ) | |
| Defendants. ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND ORDER**

Before the Court is Defendant Carl McCoy's Motion to Suppress Evidence [Doc. No. 50], filed under Fed. R. Crim. P. 12(b)(3)(C). Defendant Germaine Parker has joined the Motion [Doc. No. 60]. On August 2, 2024, the Court held an evidentiary hearing at which Defendants appeared personally and through appointed counsel, J.P. Hill for Defendant McCoy and Lance Phillips for Defendant Parker. The government appeared through Assistant United States Attorney Tiffany Edgmon, and presented two witnesses, Officers Caleb Garrison and Alan Thomas of the Oklahoma City Police Department (OCPD). The government also introduced two exhibits previously submitted with its brief [Doc. Nos. 57 and 77], which are video recordings made by the officers' body cameras. Defendant McCoy previously submitted a dashcam videorecording with his brief [Doc. No. 53]. The Court viewed all three videos in their entirety. Counsel for the parties elected to stand on the arguments in their briefs.

## FINDINGS OF FACT

The Indictment charges in separate counts that on November 22, 2023, each defendant knowingly possessed a firearm after a prior felony conviction in violation of 18 U.S.C. § 922(g)(1). Defendants move to suppress the firearms, other physical evidence, and oral statements obtained as a result of a traffic stop that occurred on that date. The sole issue presented for decision is whether the officers who stopped Defendants' vehicle had reasonable suspicion for the stop or, more specifically, whether the officers actually observed a traffic violation. It is undisputed that no violation was captured by the patrol vehicle's dashboard camera and that the officers reported seeing different violations. Officers Garrison and Thomas conducted the traffic stop, and both testified concerning the events leading up to the stop and their interactions with Defendants. Each officer was wearing a camera that captured the interactions. The evidence received establishes the following facts pertinent to the Motion, as found by the Court.

Officers Garrison and Thomas each has three years of experience as an OCPD officer, and both were trained to conduct traffic stops and to detect criminal activities involving firearms and drugs. On November 22, 2023, Officers Garrison and Thomas were assigned as patrol officers in OCPD's Santa Fe Division, which encompasses a southern part of Oklahoma City. After dark on the evening of November 22, 2023, the officers were on patrol in an OCPD vehicle in the area of Will Rogers Courts, which is a public housing development near Southwest 15th Street and South Pennsylvania Avenue. This is a high-crime area known for violent crimes, drug offenses, and firearms possession.

2

Officer Thomas was driving the patrol vehicle, and Officer Garrison was riding in the passenger seat.

The officers observed a car being driven by Parker; McCoy was in the passenger seat. Defendants' car was traveling northbound on Rotary Drive toward Southwest 15th, while the patrol car was traveling northbound on Pettee Avenue toward Southwest 15th. At this point, Rotary and Pettee run somewhat parallel to one another, separated by a row of residential structures (described as fourplexes) and green space. The residences are spaced intermittently so a car traveling on Rotary is visible to a car traveling on Pettee. The officers were trailing Defendants' vehicle by one to two car lengths.

Officer Garrison observed Defendants' car disregard the stop sign at the intersection of Southwest 15th and Rotary, meaning it did not come to a complete stop. The car turned right onto Southwest 15th traveling eastbound, and then made a lefthand turn onto Indiana Avenue and continued traveling north. Officer Thomas did not notice the incomplete stop but observed that the car driver did not signal his intention to make a righthand turn until he was already at the stop sign. The officers agreed to stop the car for a traffic violation without initially discussing what violation each had observed. When the patrol car's emergency lights were activated, a dashboard camera started automatically to record and captured the time period beginning thirty seconds before activation. The dashcam video from the officers' vehicle recorded the traffic stop, but it began after Defendants' vehicle had already turned onto Southwest 15th and was traveling eastbound. The videorecording did not capture the traffic violations reported by the officers.

Officer Thomas approached the vehicle on the driver's side and made contact with Parker. Officer Garrison approached the passenger's side and made contact with McCoy. Each defendant spontaneously made incriminating statements. Before Officer Thomas could finish stating the reason for the stop, Parker immediately began explaining that he did not make a complete stop at the stop sign because a mechanical problem with the car would cause the engine to shut off if he did. Parker continued with his explanation even after Officer Thomas said that he stopped the car because Parker failed to signal his turn before the car came to a stop. Parker also stated he did not have a driver's license. When Officer Garrison spoke with McCoy, McCoy voluntarily disclosed he had a gun in the car. Both officers testified that they smelled the order of burnt marijuana.

Both suspects were removed from their car, frisked, handcuffed, searched, and placed in the backseat of the patrol vehicle. A search of the car revealed two handguns, one under each front seat. A records search showed that Defendants were both convicted felons; McCoy had already admitted his status. During searches of Defendants and the car, the officers also found illegal drugs and drug paraphernalia.

After the stop, the officers discussed what traffic citation to issue, and a conversation about what violations they observed was captured by the bodycam recordings. During the discussion, Officer Garrison first stated that the car failed to make a complete stop at the stop sign (Rotary and Southwest 15th). Officer Thomas stated that he saw Parker did not signal before he started to turn at that intersection. Officer Garrison agreed that both violations occurred.

## CONCLUSIONS OF LAW

The government bears the burden to prove the validity of a warrantless search. *See United States v. Neugin*, 958 F.3d 924, 930 (10th Cir. 2020); *see also Florida v. Royer*, 460 U.S. 491, 500 (1983). Fourth Amendment principles governing investigative detentions under *Terry v. Ohio*, 392 U.S. 1 (1968), determine the legality of a traffic stop. *See United States v. Martinez*, 910 F.3d 1309, 1313 (10th Cir. 2018); *United States v. Polly*, 630 F.3d 991, 997 (10th Cir. 2011); *United States v. Winder*, 557 F.3d 1129, 1133-34 (10th Cir. 2009). "To justify a *Terry* stop the detaining officer must have, based on all the circumstances, a 'particularized and objective basis for suspecting' the person stopped of 'criminal activity.'" *Winder*, 557 F.3d at 1133 (quoting *United States v. Cortez,* 449 U.S. 411, 417-18 (1981)).

Tenth Circuit "precedents leave no room to doubt the validity of a traffic stop based on an observed traffic violation." *Winder*, 557 F.3d at 1135; *see Martinez*, 910 F.3d at 1313. "An observed traffic violation or a reasonable suspicion of such a violation under state law plainly justifies a stop." *United States v. Gregoire*, 425 F.3d 872, 876 (10th Cir. 2005). "Observed traffic violations necessarily afford the quantum of individualized suspicion necessary to ensure that police discretion is sufficiently constrained." *Winder*, 557 F.3d at 1135 (internal quotation omitted).

In this case, both patrol officers testified credibly that they observed conduct by Parker, the driver of Defendants' vehicle, that they believed was a traffic violation. The Court has no doubt that Officer Garrison observed the first violation of failing to come to a complete stop at the stop sign at the intersection of Rotary Drive and Southwest 15th

Street because Parker readily admitted that he intentionally did not stop fully due to a mechanical problem with the car. This conduct violates Okla. Stat. tit. 47, § 11-403(B). Notably, the bodycam recordings show that Officer Garrison voiced this observation to Officer Thomas before Officer Thomas told him that Parker had admitted it. The fact that Officer Thomas did not notice Parker's failure to stop does not mean that Officer Garrison did not actually see it. The Court also finds that both officers observed Parker's failure to signal an intention to turn right before the intersection of Rotary Drive and Southwest 15 Street. This conduct violates Okla. Stat. tit. 47, § 11-604(B).

For these reasons, the Court finds that Officers Thomas and Garrison both observed traffic violations that provided reasonable suspicion to stop the car in which Defendants were traveling on November 22, 2023. The government has met its burden to establish that the traffic stop was constitutionally permissible. Because no Fourth Amendment violation occurred, there is no basis to suppress the evidence obtained from the traffic stop.

## ORDER

**IT IS THEREFORE ORDERED** that Defendants' Motions to Suppress Evidence [Doc. No. 50] is **DENIED**.

**IT IS SO ORDERED** this 2nd day of August, 2024.

TIMOTHY D. DeGIUSTI
Chief United States District Judge